## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RHONDA J. THOMPSON,
    Plaintiff

    v.

BROTHERHOOD OF MAINTENANCE
OF WAY EMPLOYEE DIVISION OF
INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, *et al.*,
    Defendants

No. 24 CV 13368

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

The plaintiff, Rhonda Thompson, filed this lawsuit against the defendants, Brotherhood of Maintenance of Way Employee Division of International Brotherhood of Teamsters ("BMWED")[1] and Elgin, Joliet & Eastern System Division of Brotherhood of Maintenance of Way Employee Division of International Brotherhood of Teamsters ("Elgin").[2] (R. 1.)[3] She alleges discrimination against her on the basis of gender under Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983; discrimination on the basis of race under Title VII and

---

[1] According to the defendants, BMWED is improperly named in this suit. (R. 22-1 at 1 n.1.) "The correct name is Brotherhood of Maintenance of Way Employe[e]s Division of International Brotherhood of Teamsters." (*Id.*)

[2] The defendants also note that Elgin "no longer exists as an entity." (*Id.* at 1 n.2) "When it did, it was called Elgin Joliet and Eastern System Division." (*Id.*) It has since merged with another division of BMWED. (*Id.*)

[3] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

42 U.S.C. § 1981; retaliation under Title VII[4] and Sections 1981 and 1983; and breach of contract.[5] (*Id.*) The defendants moved to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 12(b)(5) and (b)(6), arguing that (1) the defendants were not properly served; (2) the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, pre-empts the plaintiff's claims; (3) the defendants are not "state actors" subject to Section 1983 liability; and (4) the claims are untimely, not administratively exhausted, or otherwise fail to state claims. (*See generally* R. 22.) In the alternative, the defendants request that the Court order the plaintiff to provide a more definite statement under Federal Rule of Civil Procedure 12(e). (*Id.* at 1, 14–15.)

## BACKGROUND

The facts below are taken from the complaint and are accepted as true for the purpose of resolving the motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff is a Polish-Caucasian, light-skinned woman, over forty years of age. (R. 1 ¶ 10.) She was hired by the Illinois Central Railroad Company ("ICRC") in 1999 and is currently employed as a Class B Backhoe Operator. (*Id.* ¶¶ 10–11.)[6] In that role, the plaintiff maintains and repairs tracks throughout Illinois. (*Id.* ¶ 12.) The plaintiff alleges that while at ICRC—though she refers to them as the "defendant"—"she has

---

[4] The Court notes that Count III is not labelled as a Title VII claim, but throughout it refers to Title VII. For that reason, the Court infers that Count III is also a Title VII claim.

[5] As will be discussed within, the plaintiff may also have alleged a duty of fair representation claim.

[6] The plaintiff separately filed suit against ICRC, which is pending before this Court. 24-cv-13367. The Court notes that there appears to be discrepancies in the facts across the complaints. (*Compare* 24-cv-13367, R. 4 at ¶ 12 (noting hiring date as 1991) with 24-cv-13368 at R. 1 ¶ 10 (noting hiring date as 1999).) For the purposes of this Order, the Court relies on the facts as written in this complaint. (R. 1.) That said, the Court cautions the plaintiff and her attorney to be diligent in reviewing the pleadings it puts before the Court, particularly as the attorney is required to do so under Rule 11.

witnessed several women being treated to different terms and conditions in the workplace." (*Id.* ¶ 14.) Specifically, the plaintiff avers that she and other females did not have access to bathrooms on various job sites. (*Id.* ¶ 15.) The plaintiff also alleges that she and other females were "not assigned certain assignments that required her to operate equipment within her trade and job title"; those opportunities went to Hispanic males. (*Id.* ¶¶ 19–21.) According to the plaintiff, this allowed those individuals to receive more compensation in the form of mandatory overtime. (*Id.* ¶¶ 22–23.) This has occurred since March 1, 2020. (*Id.* ¶ 25.)

The complaint details how the plaintiff is a member of a union, presumably the defendants. (*Id.* ¶ 27.) She explains that there was a collective bargaining agreement ("CBA") between ICRC and her union, which included a grievance procedure. (*Id.* ¶¶ 29, 31–34.) In October 2020, the plaintiff filed a grievance about being passed over for overtime, which was denied. (*Id.* ¶ 32–33.) She alleges that the defendants "failed to follow the grievance procedures set forth in the CBA due to its discriminatory actions based on the plaintiff's race and gender." (*Id.* ¶ 34.) The plaintiff also asserts that at some point "[a]n agreement was reached, which prejudiced [her] right to a fair arbitration of her grievance based on race and gender." (*Id.* ¶ 35.) Since that time, the plaintiff alleges, she has "received threats of failure of representation and passed over for overtime on multiple occasions[.]" (*Id.* ¶ 36.)

As for further allegations against the defendants, the plaintiff asserts that the "union failed to post the seniority list in a visible area, per the CBA[.]" (*Id.* ¶ 37.) She also alleges that the defendants failed to hold meetings to allow job bidding, which is

also required under the CBA. (*Id.* ¶ 43.) The plaintiff complains that "[t]he union also failed to address concerns regarding women having access to bathrooms in the field[ ]." (*Id.* ¶ 44.) She states that she attempted to report these issues over the course of the last five years, to no avail; indeed, she asserts that she was retaliated against for doing so. (*See, e.g.*, *id.* ¶¶ 71–75.)

The plaintiff purportedly filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 1, 2021, alleging race and gender discrimination under Title VII. (*Id.* ¶ 6.) That complaint has not been provided to the Court. Nor has the right-to-sue letter the plaintiff alleges she received been provided. (*Id.* ¶ 8.) According to the complaint, the letter was received on September 30, 2024; this lawsuit followed within the EEOC's 90-day rule. (*Id.* ¶ 8–9.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to "enforce the service of process requirements through a pretrial motion to dismiss." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing Fed. R. Civ. P. 12(b)(5)). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Id.* (citing *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005)). If the Court determines that proper service has not been effectuated, and that the plaintiff "lacks good cause for not perfecting service, the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id.* (citing Fed. R. Civ. P. 4(m)). The Court has inherent discretion in deciding the appropriate course of action. *Id.* Finally, when deciding a Rule 12(b)(5) motion, the Court "may consider affidavits and other

4

documentary evidence." *Paulsen v. Abbott Lab'ys.*, 368 F. Supp. 3d 1152, 1163 (N.D. Ill. 2019).

In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Calderon-Ramirez v. McCarment*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (quotations omitted). The Court "draw[s] all reasonable inferences in [the plaintiff's] favor." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citations omitted). The Court will not accept legal conclusions or conclusory allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ANALYSIS

### I. RULE 12(B)(5) MOTION TO DISMISS

As a threshold matter, the defendants argue that they were not timely served pursuant to Federal Rule of Civil Procedure 4(m). (R. 22-1 at 8.) Rule 4(m) requires that the complaint be served within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). For an unincorporated association such as BMWED—and Elgin by extension, as it is now part of BMWED, (*see* R. 33 at 7 (identifying BMWED as an unincorporated association)), the plaintiff was required to comply with the service rules prescribed in Rule 4(h). That rule requires an unincorporated association to be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. 4(h)(1)(B).

5

According to the defendants, service on BMWED was attempted on March 20, 2025, when the process server left documents with "John F." (R. 22-1 at 8.) But the defendants assert that "there has never been an employee, manager, officer, or agent of BMWED named John F." (*Id.*) The plaintiff counters that service was proper because it was made on BMWED's agent, Tony Cardwell, who "[the d]efendants do not dispute" is the proper agent for service. (R. 28 at 2.) While Cardwell may be the proper agent for service, service was not made on him directly. It was made on a "John F." The affidavit of service identifies "John F." as a "Manager" who is "authorized by appointment or by law to receive service of process" for BMWED. (R. 28-4 at 1.) The defendants rebut this by providing records to show that in March 2025, when service was made, they did not employ anyone by the name of John F. (*See generally* R. 33-1; R. 33-2.) It is the plaintiff's burden to show that BMWED was properly served. *Lee v. Cook Cnty. Health & Hosp. Sys.*, No. 19 C 04560, 2024 WL 1798253, at *1 (N.D. Ill. Apr. 25, 2024). The plaintiff has not put forth evidence to show that John F. was the appropriate person upon which to effectuate service, and has not shown good cause for their inability to do so. As such, the Court finds that service has not been properly effectuated on BMWED.

As for Elgin, the defendants first point out that Elgin, "as an entity, does not exist[.]" (R. 22-1 at 9 (explaining Elgin's murder with Unified Systems Division).) But further, the defendants explain that the person upon which the plaintiff effectuated service, Patrick Charters, "was not an officer or agent of Elgin when it did exist; he is not an officer or agent of [Unified Systems Division], and he was not authorized by

law to receive service of process for either [d]efendant in March of 2025." (*Id.*) The plaintiff appears to argue that service on Cardwell was appropriate for Elgin. (R. 28 at 3.) But she does not explain why service on *Charters* was appropriate, let alone who Charters is. And according to the affidavit of service from March 26, 2025, Charters was served at an address that is actually a residential home. (See R. 28-1 (listing address), R. 33 at 8 (explaining how service location is a residence).)[7] As such, the Court finds that the plaintiff has not met her burden, and Elgin too was improperly served.

That said, while dismissal of this action would be an appropriate outcome, Fed. R. Civ. P. 4(m), the Court chooses to exercise its discretion and permit the plaintiff to properly effectuate service within 21 days of this Order. This case has been pending since December 2024, and the Court sees no reason for the plaintiff to have difficulty properly following the rules in place for this important procedure. Failure to do so could warrant dismissal of this case.

## II.    RULE 12(B)(6) MOTION TO DISMISS

The remaining arguments are made under Rule 12(b)(6). The Court considers these in turn.

### A.    Pre-emption Under the RLA

The defendants argue that the Court lacks jurisdiction over the plaintiff's claims because they are pre-empted by the RLA. (R. 22-1 at 6–8.)[8] The RLA "sets up

---

[7] The Court may take judicial notice of items in the public record, such as addresses. *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003).

[8] The Seventh Circuit has questioned whether RLA preclusion "deprives federal courts of subject matter jurisdiction rather than simply defeat[ing] the claim." *See Carlson v. CSX*

a mandatory arbitral mechanism to handle [minor] disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (quoting 45 U.S.C. § 153 First (i)). "[M[inor disputes are those 'grounded in' a [CBA]." *Carlson*, 758 F.3d at 831–32 (quoting *Haw. Airlines*, 512 U.S. at 256)).[9] That does not mean, however, that independent claims cannot touch upon a CBA whatsoever; "a claim is not barred simply because 'the action challenged by the plaintiff is arguably justified by the terms of the CBA.'" *Id.* (quoting *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001)). Thus, "if the CBA is merely relevant, but not dispositive, to the claim, then judicial resolution is not precluded." *Hoffstead v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 132 F.4th 503, 514 (7th Cir. 2025).

The defendants assert that the RLA precludes all of the plaintiff's claims. (R. 22-1 at 6–8.) The Court disagrees. With respect to Counts I–III, the defendants attempt to package these claims as "boil[ing] down to an unspecified [d]efendant or [d]efendants failing to file a grievance on [the plaintiff's] behalf and denying her 'access to her contractual rights under the CBA . . . .'" (R. 33 at 4–5 (citations omitted).) Therefore, the defendants argue, "[i]nterpreting the CBA is indispensable to [the plaintiff's] claims for relief." (*Id.* at 5.) But the plaintiff's discrimination and

---

*Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014). That said, the Seventh Circuit thus far has declined to address the issue. *Id.* ("When a future case requires a decision on whether the RLA's arbitration provision is jurisdictional, we will need to consider carefully the opposing positions recently taken on the issue by the D.C. and the Sixth Circuits."). Because the "distinction between the two grounds for dismissal is inconsequential in this case," the Court here "need not and do[es] not decide the issue[.]" *Id.*

[9] There are also procedures for resolving "major" disputes, but that is not at issue here.

retaliation claims do not rise or fall based on the meaning of any particular CBA provision. Certainly, the CBA is relevant to understanding what processes the plaintiff alleges were violated. But "[e]ven if the CBA justified [the defendants'] actions, the question is whether [the defendant] undertook its course of action *because of* [the plaintiff's protected classification]." *Hoffstead*, 132 F.4th at 514 (emphasis added). Reading the allegations in the light most favorable to the plaintiff, she alleges that the defendants failed to comply with the terms, conditions, and privileges of her employment because she is a woman and because of her skin color. (*See, e.g.*, R. 1 ¶¶ 49, 63.) The plaintiff further alleges that when she tried to report this unlawful discrimination, she was retaliated against by being further denied her rights under her employment. (*Id.* ¶ 74.) As such, the RLA does not preclude the plaintiff's discrimination and retaliation claims.

The same is not true, however, for the plaintiff's breach of contract claim. The plaintiff alleges that the defendants breached "member contracts" by not filing grievances in accordance with CBA time requirements. (*Id.* ¶ 80.) Whether the defendants violated its member contracts, or more specifically, its contract with the plaintiff,[10] "requires interpretation of the terms of those contracts." *Kwasnik v. Nat'l R.R. Passenger Corp.*, 96 C 1933, 1997 WL 109977, at *3 (N.D. Ill. Mar. 7, 1997). Accordingly, the plaintiff's breach of contract claim is pre-empted by the RLA and thus dismissed.

---

[10] Assuming there is a direct contract with the plaintiff, which the plaintiff does not allege.

## B.      Duty of Fair Representation

Though it is not labelled as such, tucked away in Count IV is the allegation that the defendants breached their "duty of fair representation . . . based on gender, by not filing grievances by the time set forth in the CBA." (R. 1 ¶ 80.) "The duty of fair representation arises out of a union's role as the exclusive representative of all employees in a collective bargaining unit." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469–70 (7th Cir. 2020) (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Unions, like the defendants, are the "exclusive bargaining agent for those employees" and thus have a "corresponding legal obligation 'to serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* at 470 (quoting *Vaca*, 386 U.S. at 177). "[T]he duty of fair representation covers all union activity and a breach occurs 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* (quoting *Vaca*, 386 U.S. at 190).

The defendants argue that, to the extent the plaintiff is alleging a breach of the duty of fair representation, it is time barred. (R. 22-1 at 13.)[11] "A duty of fair representation claim is governed by a six-month statute of limitations, which accrues 'when the claimant discovers, or in the exercise of reasonable diligence should have

---

[11] "While a plaintiff is not required to anticipate and defeat affirmative defenses such as the statute of limitations in h[er] complaint, if the 'complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.'" *Sullers v. Int'l Union of Elevator Constructors Loc. 2*, 20 C 7696, 2021 WL 4146915, at *4 (N.D. Ill. Sept. 13, 2021) (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)).

discovered,' the alleged breach[.]" *Id.* at 472 (citing *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 925 (7th Cir. 1993) and quoting *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999)). The plaintiff did not respond to this argument; it is therefore waived. *Bonte v. U.S. Bank, N.A.*, 624 F3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Nonetheless, the Court agrees that such a claim is time barred. According to the complaint, the plaintiff filed a grievance in October 2020 regarding being passed over for overtime, and that grievance was denied. (R. 1 ¶¶ 32–33.) The plaintiff asserts that the defendants failed to follow proper grievance procedures in a discriminatory manner. (*Id.* ¶ 34.) This included a purported "agreement . . . which prejudiced [the] plaintiff's right to a fair arbitration of her grievance based on race and gender." (*Id.* ¶ 35.) The plaintiff further avers that she has "received threats of failure of representation," since that time. (*Id.* ¶ 36.) This tells the Court that the plaintiff likely discovered the breach on or around October 2020, but she certainly would have discovered the breach by the time she filed her EEOC complaint in June 2021; this is so because she alleged to the EEOC that she was "discriminated against [ ] on the basis of her race and gender[,]" (*id.* ¶ 6), which was the underpinning of the breach of fair representation claim, (*id.* ¶ 80). The complaint here was not filed until December 30, 2024. (*See id.*) That is far beyond the six-month statute of limitations. Based on the allegations in the complaint, to the extent the plaintiff is asserting a breach of fair representation claim, that claim is time barred.[12]

---

[12] In a footnote in their opening brief, the defendants argue that the plaintiff's Title VII, Section 1981, and Section 1983 claims are subsumed by the duty of fair representation claim.

### C.    Whether the Defendants are State Actors

The defendants also move to dismiss the plaintiff's Section 1983 claims on the basis that the defendants are not state actors. (R. 22-1 at 10–11.) To bring a Section 1983 claim, a plaintiff "must show two elements: (1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled in part on other grounds by*, *Daniels v. Williams*, 474 U.S. 327 (1986)).

"As a general matter, 'unions are not state actors; they are private actors.'" *Id.* at 397–98 (quoting *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009)). There are exceptions to this rule, however; a private actor's conduct may constitute "state action" "where the deprivation is 'caused by the exercise of some right or privilege created by the state . . . or by a person for whom the state is responsible' and 'the party charged with the deprivation . . . may fairly be said to be a state actor.'" *Id.* at 398 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). Put another way, "'[a] private defendant acts 'under color of' state law for purposes of Section 1983 when [it] is a 'willful participant in joint action

---

(R. 22-1 at 14 n.12.) Specifically, they assert that "[t]he allegations relate to terms and conditions of employment that require interpretation of the CBA" and that those claims are "precluded under the RLA." (*Id.*) The Court has already determined which claims are and are not precluded by the RLA; it found that the discrimination and retaliation claims are not. Therefore, the Court rejects this argument.

with the State or its agents.'" *Id.* (quoting *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281 (7th Cir. 1986)).

Here, the plaintiff needed to "allege facts that show a sufficient nexus between the state and the [defendants] so that the [defendant's] alleged infringement of [the plaintiff's] federal rights is 'fairly attributable to the state.'" *Id.* (quoting *Lugar*, 457 U.S. at 937). She did not do so. The plaintiff asserts that it is her "position that it is because of the allegations raised in the Complaint and her Charge of Discrimination regarding the [d]efendant's involvement with [ICRC]" that make the defendants state actors. (R. 28 at 3–4.) But the plaintiff does not allege that ICRC is a state actor—the conclusory throw-away comment in her response that ICRC is a state actor does not cut it, (*see id.* at 4)—and she does not allege a nexus between the defendants and ICRC such that the defendants' actions are fairly attributable to the state. Indeed, the only reference to violations of a Constitutional right is made in reference to actions done by the defendants and/or their agents; there is nothing linking them to the ICRC, the purported state actor. (*See* R. 1 ¶¶ 54.) As such, the plaintiff has failed to plead that the defendants are state actors; her Section 1983 claims are dismissed.

There are also a myriad of Section 1981 claims in the complaint. A contradictory component of the plaintiff's complaint is the manner in which she relies on Section 1981 and 1983. Section 1981 applies only to "nongovernmental discrimination and impairment under color of State law." 42 U.S.C. 1981(c). If a defendant is a state actor, a section 1981 claim must be resolved under section 1983. *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014).

What is confusing for the Court is that Count I is brought under Section 1983, and Count II, which like Count I is a discrimination charge, is brought under Section 1981. Count III is brought under both. The Court notes this because the plaintiff argued that the defendants were state actors, (*see* R. 28 at 3–4), which means that the references to Section 1981 are actually subsumed by the Section 1983 analysis. A reasonable inference is that, based on the plaintiff's contention that the defendants are state actors, she did not intend to treat the Section 1981 claim as one against a nongovernmental entity. This would make sense, as the plaintiff cannot have it both ways. Because the Court concluded that Section 1983 does not apply, that same conclusion also applies to the Section 1981 claims.

### D.    Failure to State a Claim

The Court must now consider whether the remaining claims—Title VII based on gender and race discrimination, and retaliation—fail to state a claim.

The Court begins with the plaintiff's Title VII discrimination claims. As a threshold matter, "[b]efore bringing a Title VII claim, a plaintiff must first exhaust h[er] administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). The plaintiff alleges that she followed these steps; specifically, she avers that she filed a complaint with the EEOC on June 1, 2021, received her right to sue letter on September 30, 2024, and filed this complaint within the requisite 90-day rule. (R. 1 ¶¶ 6–9.) The defendants acknowledge this but argue that, to the extent the plaintiff's discrimination claims are brought based on conduct that occurred after June 2021, the plaintiff has failed to administratively exhaust those claims. (R. 22-1 at 12.)

Typically, a plaintiff can only bring claims included in her EEOC charge or those "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). But the Court cannot analyze whether any of the plaintiff's allegations from "the last five years" (R. 1 ¶ 73) reasonably grow out of the initial EEOC charge because the plaintiff failed to provide the Court with a copy of the document.[13] Therefore, any claim of Title VII discrimination that is based on conduct occurring after June 2021 is dismissed.

As for the substance of the Title VII discrimination claims, the defendants make no argument as to whether the plaintiff failed to substantively allege a claim of gender discrimination. Therefore, the plaintiff's gender discrimination claim survives. And in their opening brief, the defendants argued that the plaintiff's allegations of "reverse discrimination" were insufficiently pled. (R. 22-1 at 12–13.) In light of the Supreme Court's decision in *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025), the defendants have dropped this argument. (R. 33 at 11, n.13.) Seeing no other argument regarding the substance of the plaintiff's race discrimination claim, this Title VII claim also survives.

Finally, the defendants did not make any arguments as to the substance of the plaintiff's retaliation claims—*i.e.*, that she failed to state a claim. Accordingly, the Court denies the motion as to the Title VII retaliation claim, Count III.

---

[13] The plaintiff refers to the EEOC charge as Exhibit A and the right-to-sue letter as Exhibit B. (R. 1 ¶¶ 6, 8.) Those documents were not attached to the complaint and have not otherwise been filed.

15

### III.    RULE 12(E) MOTION FOR MORE DEFINITE STATEMENT

The defendants ask the Court to, in the event it does not dismiss all of the plaintiff's claims, "order her to submit a more definite statement under Fed[eral] R[ule of] Civ[il] Proc[edure] 12(e)." (R. 22-1 at 15.) Rule 12(e) allows for a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague and ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A 12(e) motion must be made before filing a responsive pleading and must indicate what information is deficient and the details desired." *Golden v. Nadler Pritikin & Mirabelli*, No. 05 C 0283, 2010 WL 5373876, at *1 (N.D. Ill. Dec. 21, 2010). And a Rule 12(e) motion "should only be granted 'when the pleading is so unintelligible that the movant cannot draft a responsive pleading.'" *Id.* (quoting *MacNeil Auto. Prod., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 790 (N.D. Ill. 2010)).

Here, the plaintiff's complaint, while certainly bare bones in many respects, "is not so unintelligible that [the defendants] cannot draft a responsive pleading[.]" *Id.* The plaintiff alleges that after filing a grievance, she was discriminated against and retaliated against. (*See, e.g.*, R. 1 ¶¶ 32–36.) This puts the defendants on notice of her claim. That said, the plaintiff requested leave to amend her complaint. (R. 28 at 5.) The plaintiff has not filed an amended complaint before. And plaintiffs are generally afforded the opportunity to amend their complaints at least once. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013). Accordingly, the Court will allow the plaintiff to amend her complaint.

16

## CONCLUSION

For the reasons articulated in this Order, the defendants' motion [22] as to Counts I, II, and III is granted in part and denied in part. Specifically, Counts I–III's Title VII claims remain, while the Section 1981 and 1983 claims are dismissed. The motion is further granted as to Count IV. To the extent the plaintiff alleges a breach of the duty of fair representation, the defendants' motion is granted. The plaintiff is granted leave to amend her complaint and must do so on or before September 23, 2025. The defendants shall respond to either the complaint or amended complaint, if filed, on or before October 14, 2025. Finally, the defendants' motion regarding timely service under Federal Rule of Civil Procedure 12(b)(5) is granted. As further discussed in this Order, the plaintiff shall properly serve the defendants within 21 days of this Order.

Date: September 2, 2025

_____

JEREMY C. DANIEL
United States District Judge

17