UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDA J. THOMPSON,<br>    Plaintiff<br><br>    v.<br><br>BROTHERHOOD OF MAINTENANCE<br>OF WAY EMPLOYEE DIVISION OF<br>INTERNATIONAL BROTHERHOOD<br>OF TEAMSTERS, *et al.*,<br>    Defendants | No. 24 CV 13368<br><br>Judge Jeremy C. Daniel |

## ORDER

The defendants' motion to dismiss [47] is granted in part and denied in part. The motion to dismiss for insufficient service of process is denied. The motion to dismiss for failure to state a claim is granted as to Counts I, II, and IV. The defendants shall respond to the operative complaint on or before April 3, 2026. Scheduling conference set for April 23, 2026, at 11:00 a.m. The scheduling conference will be held via WebEx. The parties shall confer pursuant to Fed. R. Civ. P. 26(f) on or before April 2, 2026. The parties shall file their Rule 26(f)(2) report on or before April 16, 2026. The parties' report should also address the deadline to join other parties and to amend the pleadings. Each party shall make its Rule 16(a)(1) initial disclosures on or before April 16, 2026.

## STATEMENT

**Background and Legal Standard**

The Court assumes familiarity with the facts of this case. (*See* R. 34 at 2–4.)[1] Broadly, Plaintiff Rhonda Thompson is a White woman of Polish descent. She is employed as a backhoe operator with the Illinois Central Railroad Company. She claims that women did not have access to bathrooms at jobsites and that many job assignments were given to Hispanic males over women of other races, which in turn got them mandatory overtime compensation. (R. 35 ¶¶ 15, 19–23, 25–26.) She filed a grievance about being passed over for overtime per her union's collective bargaining agreement (CBA), which was denied. (*Id.* ¶¶ 31–33.)

---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

In September 2025, this Court dismissed the plaintiff's claims brought under 42 U.S.C. §§ 1981 and 1983 against all defendants. (*See generally* R. 34.) The plaintiff filed her first amended complaint later that month. (*See generally* R. 35.) Her amended complaint alleges that Defendants Brotherhood of Maintenance of Way Employee Division of International Brotherhood of Teamsters ("BMWED") and Elgin, Joliet & Eastern System Division of Brotherhood of Maintenance of Way Employee Division of International Brotherhood of Teamsters ("Elgin") violated two federal statutes. First, she alleges that the defendants violated Title VII of the Civil Rights Act of 1964 by engaging in race and gender discrimination (Counts I–II). 42 U.S.C. §§ 2000e *et seq.*; (*id.* ¶¶ 48–71.) Second, she alleges that the defendants retaliated against her and engaged in race and ethnicity discrimination against her in violation of § 1981 of the Civil Rights Act of 1866 (Counts III–IV). 42 U.S.C. § 1981; (R. 35 ¶¶ 72–89). The defendants move to dismiss for insufficient service of process, Fed. R. Civ. P. 12(b)(5), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6). (*See generally* R. 47.)

A Rule 12(b)(5) motion challenges the plaintiff's service of process. Fed. R. Civ. P. 12(b)(5). On this motion, "[t]he plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005)). If the Court believes the plaintiff has not done so and lacks good cause, "the district court must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Id.* (citing Fed. R. Civ. P. 4(m)).

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face and has raised a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## Analysis

### Elgin—Service of Process and Title VII Claims

#### Service of Process

The Court first addresses the threshold issue of the validity of service as to Elgin. The defendants argue that all claims should be dismissed against Elgin because the

plaintiff has failed to properly and timely serve Elgin. (R. 47-1 at 11–15.) Elgin, a subdivision of BMWED, utilizes a virtual mailing service that receives its mail at a mailing address and uploads the mail to a website called "Physical Address." (R. 47-3 ¶¶ 4–5.) An officer of Elgin then downloads the mail from Physical Address and routes it appropriately. (*Id.*) Elgin's virtual mailing service is in California. (*Id.* ¶ 4.) The plaintiff's process server signed an affidavit attesting that he physically served a copy of the complaint and summons to John Reed of the virtual mailing service, and that he sent a copy by first class mail to Elgin. (R. 52 at 1.) The plaintiff attached an email from the day after service attesting that it had been completed. (R. 52-1 at 1.) The defendants counter with affidavits attesting that they did not receive the latter. (R. 47-2; R. 47-3.) Consequently, they argue that service was insufficient under federal law, Illinois law, and California law.

To serve Elgin under federal law, a plaintiff may either serve an association (like Elgin or BMWED) under Rule 4(h)(1)(A) or 4(h)(1)(B). Under Rule 4(h)(1)(B), the plaintiff would be required to serve Elgin "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). A further qualification in Rule 4(h)(1)(B) is that, if the defendant's agent is authorized to receive service by statute, the plaintiff must also mail a copy of the complaint and summons to each defendant. Under Rule 4(h)(1)(A), which points to Rule 4(e)(1), a plaintiff can also serve an association by complying with the service of process law of the state where the district court is located or where the service was made. Fed. R. Civ. P. 4(e)(1); 4(h)(1)(A).

Under California law, a plaintiff may serve an agent of an association using substitute service, which includes commercial mail receiving services. Cal. Civ. Proc. Code § 415.20(a); Cal. Bus. & Prof. Code § 17538.5(d)(1). Using substitute service in this manner would require the plaintiff to leave the complaint and summons at Elgin's usual mailing address and to send a copy by first-class mail to Elgin. *Id.*

Under Illinois law, a plaintiff is required to serve an association "by leaving a copy of the process with any officer of the association personally or by leaving a copy of the process at the office of the association with an agent of the association." 735 ILCS 5/2-205.1.

"In determining whether summons was personally served, the court may consider affidavits, other documentary evidence, depositions, and oral testimony." *Falconer v. Gibsons Rest. Grp., LLC*, No. 10 C 1013, 2011 WL 43023, at *1 (N.D. Ill. Jan. 6, 2011) (citing *Relational, LLC v. Hodges*, 627 F.3d 668 (7th Cir. 2010)). Here, the affidavits appear to conflict. "A signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir. 1993) (internal quotations omitted).

Other courts in this district have held that a defendant's self-serving affidavit merely stating that it never received the summons is not "strong and convincing evidence." *See Bilal v. Rotec Indus., Inc.*, No. 03 C 9220, 2004 WL 1794918, at *3 (N.D. Ill. Aug. 5, 2004); *Peralta v. El Tiburon, Inc.*, 252 F. Supp. 3d 658, 661–62 (N.D. Ill. 2017); *contra Durukan Am., LLC v. Rain Trading, LLC*, 787 F.3d 1161, 1164 (7th Cir. 2015) (ordering the district court to hold an evidentiary hearing where the defendant offered specific facts by reference to his location at the time of service). This Court accepts and adopts their reasoning and finds that Elgin has failed to provide strong and convincing evidence that it did not receive the complaint and summons by mail. Accordingly, the motion to dismiss for insufficient service of process is denied.

Title VII

Because the Court denies the defendants' 12(b)(5) motion, it reaches the question of whether the plaintiff's Title VII allegations exceed the scope of its Equal Employment Opportunity Commission ("EEOC") charge as to Elgin. The defendants argue that the plaintiff did not exhaust her administrative remedies as to Elgin because Elgin was not named in the plaintiff's EEOC charge. (R. 47-1 at 6–7.)

To sue under Title VII, a plaintiff must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). A charge that ripens into a lawsuit generally must include the name of each party the plaintiff intends to sue. *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981). Here, the plaintiff filed a charge as to BMWED in June 2021. (R. 35 ¶ 75; R. 35-1.) The EEOC returned a notice of no determination on September 30, 2024, discharging the case and issuing her a right to sue letter. (*See* R. 35-2.) She timely filed suit ninety days later, on December 30, 2024. (R. 1.) This EEOC charge did not mention nor give notice to Elgin. (R. 35-1.) The plaintiff argues that Elgin had notice because Elgin and BMWED share a Michigan address and have overlapping leadership, citing portions of her amended complaint. (R. 35 ¶¶ 4–5; 27–31; 47; 72–77.) These paragraphs do confirm that the plaintiff alleged that BMWED and Elgin share an address, but as the defendants correctly point out, they do not provide support for the contention that BMWED and Elgin had overlapping leadership. (*See* R. 47-1 at 7.)

In *Eggleston*, the Seventh Circuit considered an exception to the rule that each sued party be named in the EEOC charge. 657 F.2d at 905–07. The court assessed whether the unnamed party in the EEOC charge was given adequate notice from the initial charge and whether the unnamed party was given the opportunity to engage in conciliation proceedings with the charging party. *Id.* They concluded that it was justified to allow the suit against the unnamed party to proceed because the named and unnamed parties had significantly overlapping senior leadership who would have had notice of the charge for both groups. (*Id.*) As to the opportunity for conciliation, the court found that, once the unnamed party received notice of the charge, "nothing

4

prevented it from attempting to resolve the alleged discrimination in an amicable manner." *Id.* at 907. Notably, however, this situation differed from the instant case because there, the EEOC sought to effect compliance from the named party during the pendency of the charge, which has not occurred here. *Id.* at 905.

In *Alam v. Miller Brewing Co.*, 709 F.3d 662 (7th Cir. 2013), the Seventh Circuit applied *Eggleston* where the plaintiff sued two defendants and had only named one in his EEOC charge. Specifically, the plaintiff had sued Miller Brewing for employment discrimination years before and settled that case out of court with Miller Brewing. *Id.* at 664. He then went to work for MillerCoors—which is a joint venture between Miller Brewing and Coors Brewing Company—to develop a software prototype for them. *Id.* After MillerCoors showed initial interest, it later withdrew, citing the litigation and settlement with Miller Brewing. *Id.* The plaintiff then filed a charge with the EEOC against only MillerCoors. *Id.* at 665. He received a right-to-sue letter and filed suit against both MillerCoors and Miller Brewing. *Id.* The Seventh Circuit found that the plaintiff's complaint "failed to allege any facts in the amended complaint regarding whether Miller Brewing had notice of an EEOC charge or an opportunity to participate in conciliation proceedings." *Id.* at 667.

This case is more like *Alam* than *Eggleston*. Here, the plaintiff fails to allege that there was overlapping leadership, or really any connection, between Elgin and BMWED except for a shared address. (R. 35 ¶¶ 4–5.) Without more, this Court cannot conclude that the plaintiff has adequately alleged that Elgin had notice of the charge or had an opportunity to conciliate outside of litigation. Vague references to plural defendants in the EEOC charge do not cure the charge's deficiency. (*See id.* ¶ 37.) The Court grants the defendants' motion to dismiss Counts I and II as to Elgin.

**BMWED—Title VII Claims**

As to BMWED, the defendants next argue that the plaintiff fails to state a claim under Title VII. (R. 47-1 at 3–7.) The plaintiff alleges that BMWED discriminated against her on the basis of her race and gender in providing overtime opportunities to Hispanic males and denying women access to bathrooms at jobsites. The defendants argue there are two deficiencies with these allegations: (1) that the plaintiff has not effectively connected the alleged discrimination with her protected characteristics, and (2) that she has not shown how the union itself is responsible. (R. 47-1 at 4–6.)

To plead discrimination by a labor organization under Title VII, a plaintiff must allege that she has been discriminated against because of her race, color, religion, sex, or national origin or to cause or attempt to cause an employer to engage in discrimination. 42 U.S.C. §§ 2000e-2(c)(1)–2(c)(3). The Seventh Circuit has held that this is a low pleading threshold. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("We previously have stated, on numerous occasions, that a plaintiff alleging

5

employment discrimination under Title VII may allege these claims quite generally."). And a plaintiff need not "plead the existence of a pattern or practice of discrimination under Title VII." *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 958 (N.D. Ill. 2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Even under these liberal pleading standards, the Court finds that the plaintiff has failed to adequately plead that the union discriminated against her based on race or gender. The only action she ascribes to the union is related to her grievance being denied and BMWED prejudicing her right to a fair arbitration of her grievance based on race and gender. (R. 35 ¶¶ 33–35.) Any connection to race and gender is conclusory at best. While the plaintiff does allege that she was treated differently based on her race and gender in being denied a restroom and in being passed over for overtime, (*id.* ¶¶ 14–15, 19–26), those actions are more aptly ascribed to her employer. The plaintiff has not alleged that the union, as opposed to her employer, discriminated against her, since she fails to claim that the union is in charge of overtime decisions and bathroom access on jobsites. The Court thus dismisses Counts I and II against BMWED.

**BMWED and Elgin—Section 1981 Claims**

Race and Ethnicity Discrimination

The defendants next argue that the plaintiff fails to plausibly allege that BMWED and Elgin discriminated against her on the basis of race within the meaning of § 1981. The plaintiff alleges the defendants discriminated against her under § 1981 for the same reasons the plaintiff believes the union discriminated against her per Title VII. "The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]" *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733, F.3d 722, 728 (7th Cir. 2013)). "To state a prima facie claim for relief under § 1981, [a plaintiff] must (1) identify his national origin or that he is a member of a racial minority; (2) show that the defendants had the intent to discriminate on the basis of his race or national origin; and (3) show that the discrimination concerned the making or enforcing of a contract." *Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, 175 F. Supp. 3d 1026, 1039 (N.D. Ill. 2016) (citing *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 695 n.4 (7th Cir. 2006)).

The plaintiff makes only conclusory allegations that union leadership "denied the plaintiff the equal terms, conditions, benefits or privileges of employment as it related to her rights as a union member." (R. 35 ¶ 85.) She does not allege facts to show that BMWED or Elgin intended to discriminate against her on the basis of race. For the same reasons the Court granted BMWED's motion to dismiss above with regards to the plaintiff's Title VII claim—the allegations of race discrimination concern the conduct of the ICRC, not the union—the Court too grants it for Count IV.

Retaliation

Finally, the defendants argue that the plaintiff fails to plausibly allege retaliation against BMWED and Elgin. (R. 47-1 at 9–11.) The plaintiff claims that she engaged in protected activity in filing a grievance with BMWED and Elgin regarding ICRC's race and gender discrimination. (R. 35 ¶¶ 72–79.) She raised these complaints to BMWED and Elgin leadership. (*Id.* ¶ 76.) She claims that BMWED and Elgin retaliated by denying and ignoring her requests to file further grievances regarding overtime, assignments, and access to restrooms. (*Id.* ¶ 78.) The defendants argue that denial of grievances is not a materially adverse action. (R. 47-1 at 9–11.)

To establish retaliation, the plaintiff must show that "the Union refused to process [her] grievances because of [her] race or [her] earlier complaints about race." *Webb v. AFSCME Council 31*, No. 19-cv-4192, 2020 WL 919260, at *2 (N.D. Ill. Feb. 26, 2020) (citing *Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1107 (7th Cir. 2014)). As a preliminary matter, the defendants are correct that the plaintiff's claim for retaliation may not rest on her complaints of gender discrimination, as § 1981 is directed at remedying race discrimination, not gender discrimination. *See* 42 U.S.C. § 1981(a) (referencing the right to make and enforce contracts as equal to the right enjoyed by White citizens).

The Court finds that the plaintiff has sufficiently alleged that the union refused to process her grievances. Even if the Court were to agree with the defendants that simple denial of grievances is not sufficient, the plaintiff also alleges that she "has received threats of failure of representation [and] no representation to bring grievances" from BMWED and Elgin leadership. (R. 35 ¶¶ 36–37.) This is sufficient to state a claim that BMWED and Elgin retaliated against her for complaining of race discrimination. *See Webb*, 2020 WL 919260 at *2. The Court accordingly denies the defendants' motion to dismiss as to Count III.

Date: March 13, 2026

JEREMY C. DANIEL  
United States District Judge